Frank A. Gulotta, J.
This is a motion for an injunction pendente lite which, if it is to preserve the status quo, will have to take an affirmative form to compel the continuation of a course of conduct, rather than the usual prohibitory form.
The plaintiff is a distributor of a product called Monks ’ Bread, which is supplied to him by the defendant, a wholesale distributor, pursuant to a contract dated October 23, 1957. This instrument is obviously a standard form prepared by the defendant, the whole of it being typewritten with the exception of the date and the plaintiff’s name, which has been filled in in handwriting. Thus under familiar rules of construction, it is to be strictly construed against its draftsman and its ambiguities and uncertainties are to be resolved against him. (Gillet v. Bank of America, 160 N. Y. 549.)
*477 On March 11, 1959, the defendant served on the plaintiff a five-day notice of cancellation of the contract, as it is claimed, pursuant to paragraph 11 thereof, for various infractions allegedly committed by the plaintiff. These may be summarized as (1) failure to keep on hand an adequate supply of fresh bread, (2) delivering “stale” and “overcoded” bread to customers, (3) failure to pay for goods on time, (4) distributing outside the franchised territory.
A perusal of paragraph 11 of the contract discloses that it confers no such right on the defendant. Furthermore if we consider the agreement as a whole, the clear tenor of it is to deny any such right to the defendant, although the plaintiff is given an absolute right to cancel the contract on 30 days ’ notice. For instance, there are elaborate provisions for protecting the distributor’s rights in the event of his death and it even provides for compensating him for his franchise rights after he, i.e., the distributor, cancels the contract.
On the factual question of the breach, since it is conceded that plaintiff has the right to return stale bread for full credit and the sample invoices show that he in fact does so, the bold charge that he nevertheless delivers stale bread, requires some explanation if it is to be believed. None has been offered.
Also the words ‘ ‘ stale ’ ’ and ‘ ‘ overcoded ’ ’ in this context are artful words of a special trade requiring an explanation as to their meaning in the trade, before any conclusion on this matter can be arrived at. Plaintiff tells us they mean bread more than four days old; the defendant says nothing in this respect.
It is completely incomprehensible that this contract should contain a clause which forbids the plaintiff from selling ‘ ‘ any other products to retail outlets ’ ’; since his whole operation is based on selling other products and was from the day he entered upon the contract, to the defendant’s knowledge, which itself arranged for the plaintiff to also distribute another noncompeting factory type of bread.
In fact the Monks’ Bread operation was carried on at a loss until September, 1958, and it was these other products which helped to carry it.
Now, however, Monks’ Bread is the heart of plaintiff’s business which employs 8 route men and without which it cannot survive. It is for this reason that plaintiff seeks the aid of an equity court, since to relegate him to a common-] aw action for damages, he says, would be first to destroy him and then futilely attempt to revive the corpse with money damages.
*478 This brings us to the plaintiff’s default of $8,800 in paying for bread delivered prior to September, 1958.
The contract itself does not specifically deal with terms of payment, although the parties apparently have given it a practical construction calling for weekly settlements.
The plaintiff claims a new agreement on the $8,800 deferral, based on his waiver of his right to cancel the contract and his continuance in a losing operation until it became profitable.
In sum, without unduly prolonging this opinion, it seems to this court that there are serious questions of fact, of estoppel and novation, which dictate a need to preserve the present status of the parties until a trial can be had. This may be done in the interest of justice even when it requires a mandatory injunction. (Bachman v. Harrington, 184 N. Y. 458.) In Toledo, Ann Arbor & North Michigan Ry. Co. v. Pennsylvania Co. (54 F. 730, 741), the court said: “ The office of a preliminary injunction is to preserve the status quo until, upon final hearing, the court may grant full relief. Generally this can be accomplished by an injunction prohibitory in form, but it sometimes happens that the status quo is a condition not of rest, but of action, and the condition of rest is exactly what will inflict the irreparable injury upon complainant, which he appeals to a court of equity to protect him from. In such a case courts of equity issue mandatory writs before the case is heard on its merits. ’ ’
It is conceded that plaintiff has been current in his bills since September, 1958. They amount to $1,000 per week, after deducting the $2,000 per week which is paid directly to the defendant by chain store customers.
The injunction will be continued on condition that the present bond be increased to $10,000 and the case is directed to be added to the April 1959 Special Term Calendar upon payment of proper fees.
Settle order.